

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 18, 1957

Honorable Raymond W. Vowell
Acting Executive Director
Board for Texas State
 Hospitals and Special Schools
Austin, Texas

Opinion No. WW-327

Re: The authority of the Board
for Texas State Hospitals
and Special Schools to
conduct a timber manage-
ment program on certain
property in the Alabama-
Coushatta Indian Reserva-
tion, and related ques-
tions.

Dear Mr. Vowell:

Your opinion request is concerned with the sale of
timber from the 3,071-acre tract, owned by the State of Texas in
the Alabama-Coushatta Indian Reservation in Polk County.

In our opinion No. WW-43, we reviewed at length the
history of Indian legislation in Texas. The 3,071-acre tract
was bought by the Federal Government in 1928 for the purpose of
enlarging the then existing reservation. Under Public Law 627,
Acts of 83rd Congress, 1954, 68 Stat. 768, 25 U.S.C.A., Secs.
721 et seq., the Federal Government was authorized to deed said
tract to the State of Texas, to be held by it "in trust for the
benefit of the Indians of the Alabama and Coushatta tribes of
Texas, subject to such conditions regarding management and use
as the State of Texas may prescribe and the disposition of such
lands shall be subject to approval of a majority of the adult
members of the Alabama and Coushatta tribes of Texas."

In anticipation of the adoption of Public Law 627, the
Texas Legislature adopted Senate Concurrent Resolution No. 31
(Acts, 1953, R.S., p. 1078), authorizing the Governor to accept
on behalf of the State a transfer of the trust responsibilities
of the United States respecting the lands and other assets of
said tribes, and authorizing the Governor to "designate the
State agency in which such trust responsibilities shall rest,
and the agency so designated shall have authority to promulgate
rules and regulations for the administration of the trust and
the protection of the beneficial interest of the Indians in such
lands and other assets." Your Board was designated as the State
agency to assume such trust responsibilities.

Your letter states:

"Since acquisition of these lands, this
Board has determined that a business-like forest
management program should be conducted on this
acreage.  It is contemplated to harvest market-
able timber and do such replanting as necessary
in order to carry out this program.  Contact has
been made with the Texas Forest Service with re-
spect to assistance in carrying out such a timber
management program and they have indicated that
they could possibly cooperate with us in this
effort."

You request our opinion as to (1) whether your Board
may conduct such timber management program; (2) whether the
approval of the Indian tribes is necessary; (3) whether a por-
tion of the proceeds of timber sales may be used to pay Texas
Forest Service for its services and (4) what disposition is to
be made of receipts from timber sales and how may same be ex-
pended.

It is clear that one main purpose of both the State
and Federal governments in effecting this transfer of trust re-
sponsibilities was to enable a State agency to develop the tim-
ber resources of said reservation.  The report of the House
Committee considering Public Law 627 is set forth at length in
U. S. Code Congressional and Administrative News, 1954, p. 3119.
The following is found in the Committee Report:

"The tribal assets consist solely of land
upon which there is an excellent stand of timber.
In accordance with Sec. 6 of that Act the Secre-
tary of the Interior has an obligation to regu-
late the operation and management of Indian for-
estry units on the principle of sustained-yield
management.  It has been impracticable for the
Department of the Interior to do so in the case
of the Alabama and Coushatta unit, because its
relatively small size and its distance from other
Indian forestry units have not warranted the ex-
penditure of funds for such supervision.  However,
the nearest office of the State of Texas Forest
Service, which is seventeen miles from the Alabama
and Coushatta Reservation, is conducting various
forestry protection and conservation measures
with respect to timber lands within the general
area surrounding the reservation. . . . The Gov-
ernor of Texas has taken an active interest in
the welfare of these Indians and the protection
and development of their timber resource.  He has

urged that a complete management program be developed for the utilization and conservation of this timber resource. In the negotiations between representatives of the State of Texas and the Bureau of Indian Affairs the representatives of the State have indicated a willingness on its part to undertake, without cost to the United States, the complete management of the Indian timber land for the benefit of the tribe."

The Committee Report also contains a reference to a unanimous resolution adopted by the Alabama and Coushatta tribes of Texas on February 13, 1953, wherein the tribes voted "to authorize the great State of Texas to assume full responsibility for the management, protection, and conservation of our forest resources by applying to our reservation the policies and practices followed by the State in the management of the State forests."

In 1938 the Alabama and Coushatta Indians adopted a Constitution which was approved by the Secretary of the Interior in accordance with Title 25, Section 476, U.S.C., which provides as follows:

"Any Indian tribe, or tribes, residing on the same reservation, shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, which shall become effective when ratified by a majority vote of the adult members of the tribe, or of the adult Indians residing on such reservation, as the case may be, at a special election authorized and called by the Secretary of the Interior under such rules and regulations as he may prescribe. Such constitution and bylaws when ratified as aforesaid and approved by the Secretary of the Interior shall be revocable by an election open to the same voters and conducted in the same manner as hereinabove provided. Amendments to the constitution and bylaws may be ratified and approved by the Secretary in the same manner as the original constitution and bylaws.

"In addition to all powers vested in any Indian tribe or tribal council by existing law, the constitution adopted by said tribe shall also vest in such tribe or its tribal council the following rights and powers: To employ legal counsel, the choice of counsel and fixing of fees to be subject to the approval of the Secretary of the Interior; to prevent the sale,

disposition, lease, or encumbrance of tribal
lands, interests in lands, or other tribal assets
without the consent of the tribe; and to negotiate
with the Federal, State and local Governments.
The Secretary of the Interior shall advise such
tribe or its tribal council of all appropriation
estimates or Federal projects for the benefit of
the tribe prior to the submission of such esti-
mates to the Bureau of the Budget and the Congress."

Notice particularly the rights of the tribe under the
second paragraph above, as to their approval of the disposition
of any tribal assets. The 3,071 acres of land here involved
were conveyed to the State of Texas in trust for the Alabama and
Coushatta Tribes of Texas under Title 25, Section 721, U.S.C.,
which reads as follows:

"The Secretary of the Interior is authorized
to convey to the State of Texas the lands held in
trust by the United States for the tribe of Indians
organized and known as the Alabama and Coushatta
Tribes of Texas, located in Polk County, Texas; and
such tribe is authorized to convey to the State of
Texas the lands purchased for and deeded to the
Alabama Indians in accordance with an act of the
legislature of the State of Texas, approved Febru-
ary 3, 1854, located in Polk County, Texas. All of
the lands so conveyed shall be held by the State of
Texas in trust for the benefit of the Indians of the
Alabama and Coushatta Tribes of Texas, subject to
such conditions regarding management and use as the
State of Texas may prescribe and the disposition of
such lands shall be subject to approval of a major-
ity of the adult members of the Alabama and Coushatta
Tribes of Texas."

Title 25, Section 723, U.S.C., provides for the contin-
uation of the Constitution and bylaws of the Alabama and Cou-
shatta Tribes and reads as follows:

"Effective on the date of the proclamation
provided for in section 722 of this title, all pow-
ers of the Secretary of the Interior or any other
officer of the United States to take, review, or
approve any action under the constitution and bylaws
of the Alabama and Coushatta Tribes of Texas approved
on August 19, 1938, pursuant to sections 461, 462,463,
464--473, 474, 475, 476--478, and 479 of this title,
are terminated. Any powers conferred upon the tribe

by its constitution and bylaws that are incon-
sistent with the provisions of this Act are
terminated.  Such termination shall not affect
the power of the tribe to take any action under
its constitution and bylaws that is consistent
with section 721--728 of this title without the
participation of the Secretary or other officer
of the United States in such action."

From these statutes it is our opinion that the Federal
Government did not intend to grant nor the State of Texas to as-
sume any powers as trustee over said lands not previously exer-
cised by the Federal Government.  The lands and all tribal assets
are the property of the Alabama and Coushatta Tribes, and any
disposition of these assets is subject to the approval of a ma-
jority of the Indians.  Consequently, it is our opinion that any
sale of the timber from said lands is subject to the approval of
the tribes and receipts from such sale should be the property of
said tribes.

From the foregoing and in the light of the history of
the legislation, both State and Federal, it is our opinion that
a timber management program involves the disposition of lands
and assets of the Alabama and Coushatta Indians and your Board
is not authorized to conduct such a program without the approval
of said Indians.

As to your remaining questions, we deem it sufficient
to say that the whole program should be approved by the Indians
including method of selling timber, method of financing program,
and disposition of proceeds from sale of timber.

## SUMMARY

The Board for Texas State Hospitals and Spe-
cial Schools may not conduct a timber management
program on the 3,071-acre tract of land owned by
the Alabama and Coushatta Indians, without the
approval of said Indians.  The program should be
submitted to the Indians for their approval and
should include the method of financing said prog-
ram, method and procedure for selling timber, and
plan for disposition of all proceeds from the sale
of timber.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _Galloway Calhoun, Jr._
Galloway Calhoun, Jr.
Assistant

GCJr:pf:wb

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
J. Mark McLaughlin
Mrs. Marietta McGregor Payne
Leonard Passmore

REVIEWED FOR THE ATTORNEY GENERAL

By:  Arthur Sandlin